UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

Case No. EDCV 11-2063 DOC (JEMx)                          Date: February 24, 2012

Title: MIGUEL & ORALIA ARROYO v. AURORA BANK, FSB & AURORA LOAN SERVICES, LLC

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                      NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

        Before the Court is Defendants Aurora Bank, FSB and Aurora Loan Services, LLC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Mot.") (Dkt. 11). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. The Court has considered the moving, opposing, and replying papers, and hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

        **I.**         **BACKGROUND**

        Taken as true and in the light most favorable to Plaintiffs, the facts alleged by Miguel and Oralia Arroyo (the "Arroyos" or "Plaintiffs") are as follows:

        **A.**         **CONDUCT PRIOR TO SIGNING THE WORKOUT AGREEMENT**

        In April 2007, Plaintiffs Miguel and Oralia Arroyo became indebted to Universal American Mortgage Company of California in the amount of $584,250 as a result of the Arroyos' purchase of a home. Compl. ¶ 9, Notice of Removal Ex. A (Dkt. 1). The mortgage was secured by a deed of trust recorded on the property. *Id.* At some point in time unknown, Aurora became the servicer

for the mortgage and began collecting the Arroyos' payments.[1] *Id.* ¶ 10. Plaintiffs fell behind in their payments, and, on April 16, 2009, Aurora began foreclosure proceedings against the property by filing a Notice of Default. *Id.* ¶ 11. Initial attempts in July 2009 to receive a loan modification failed when the Arroyos made several payments under an oral agreement but Aurora never rendered a decision on the Arroyos' modification request. *Id.* ¶¶ 12-15.

### B. THE WORKOUT AGREEMENT AND CONDUCT UNTIL DECEMBER 13, 2010

On June 22, 2010, the Arroyos entered into a forbearance agreement with Aurora (the "Workout Agreement"). *Id.* ¶ 16. The Workout Agreement arose from a forbearance request by the Arroyos and forms the crux of their dispute with Aurora; it is attached to their complaint.[2] *See* Compl. Ex. A (the "Workout Agreement"), Notice of Removal Ex. A. The Arroyos do not identify any discussions with Aurora immediately prior to signing the agreement. The Workout Agreement specifies that the Arroyos would make six payments on the first of each month, starting with July 1, 2010. *Id.* at 8 ¶ a.1. In exchange for these payments, Aurora would refrain from initiating foreclosure proceedings during the term of the Workout Agreement. *Id.* at 2; *see also id.* at 4 ¶ 3. The Arroyos acknowledged that this would be Aurora's consideration for the Workout Agreement. *Id.* at 2. The Workout Agreement would "expire on the Due Date of the Sixth Plan payment;" the due date for that sixth payment was December 1, 2010. *Id.* at 8 ¶ a.2; *see also id.* at 8 ¶ a.1; 4 ¶ 2.

The Arroyos acknowledged that upon expiration of the Workout Agreement, the Arroyos would still be in default and would still need to find a way to repay their accumulated arrearage. *Id.* at 3; 5 ¶ 8; and 9 ¶ b. Because the account would remain delinquent, the Workout Agreement makes clear that upon its conclusion the Arroyos would need to "cure the Arrearage through a full reinstatement, payment in full, loan modification agreement or other loan workout option that [Aurora] may offer." *Id.*

---

[1] Plaintiffs allege that Aurora Bank, FSB and Aurora Loan Services, LLC are agents of one another, and that each's actions were thus the actions of the other. Compl. ¶¶ 2-4. As Plaintiffs do not differentiate between the two Defendants in their accusations, the Court refers to them collectively as "Aurora" or "Defendants."

[2] Both the Workout Agreement and an August 18, 2010, letter from Aurora are attached to Plaintiffs' complaint as Exhibits A and B, respectively. Material properly submitted with a complaint can be considered as part of the complaint for a motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The Court may disregard allegations in the body of the complaint that are contradicted by reference to documents attached to the complaint as exhibits. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The Workout Agreement does not guarantee which particular "cure" method listed in the Agreement the Arroyos would be afforded, only that the Arroyos would need to pursue one of them in order to cure the arrearage. *Id.* Failure to cure the arrearage through one of the specified methods upon expiration of the Workout Agreement would allow Aurora to resume foreclosure proceedings. *Id.* Tender of the final payment by the Arroyos would not constitute acceptance on Aurora's part of a loan modification or other workout plan. *Id.* at 9 ¶ a.2.

The Workout Agreement contemplates considering the Arroyos for a loan modification, even if it does not promise to actually offer them one. The Workout Agreement states that after making the second payment under the plan (the August 1, 2010, payment), "it shall be the [Arroyos] responsibility to provide [Aurora] with accurate and complete financial information in support of the [Arroyos'] request for a loan modification or other workout option." *Id.* at 8 ¶ a.2. The Arroyos made their first two payments under the Workout Agreement. Compl. ¶ 21. Aurora then sent them a letter dated August 18, 2010 (the "August 18 Letter"), stating "we would like to offer you a more permanent foreclosure alternative option." *See* Compl. Ex. B (the "August 18 Letter") at 22, Notice of Removal Ex. A.

The August 18 Letter made several pertinent statements. It requested a multitude of documents so that Aurora could "review your loan for a more permanent option." *Id.* at 22.[3] The August 18 Letter does not name which "more permanent option" Aurora wanted to offer. However, it does state that "You may be required to complete a repayment plan prior to modification of your loan" and "You will be expected to pay a loan modification fee." *Id.* at 23. The August 18 Letter also states that Aurora could not review the Arroyos' file without the requested documents, and that once all documents were received and reviewed, Aurora "will advise you of [Aurora's] decision." *Id.* at 22-23. If any documents were missing, Aurora would send Plaintiffs a "missing items letter" requesting the missing documents. *Id.* at 23. The Arroyos sent Aurora the documents requested in the August 18 Letter within the proper time frame. Compl. ¶ 29. The Arroyos then made three more (September, October, and November) of their six scheduled payments; Aurora accepted each. *Id.* ¶ 21.

### C.    THE DECEMBER 13, 2010, PHONE CALL

According to Plaintiffs, on December 13, 2010, a phone call took place between Aurora and the Arroyos. *Id.* ¶ 30. During this conversation Aurora apparently "rescinded" the Workout Agreement because Aurora claimed Plaintiffs had not submitted the requested documentation. *Id.* Plaintiffs contend that they submitted the required documents in a timely fashion. *Id.* ¶¶ 29-30. Because the Workout Agreement was "rescinded," Aurora told the Arroyos that their sixth payment

---

[3]It is unclear how Plaintiff's Exhibit B, the August 18 Letter, is paginated. The letter is three pages long but has page numbers beginning with "p.22" in the upper right hand corner. The Court will refer to these page numbers when citing to the August 18 Letter.

under the Workout Agreement was "excused." *Id.* ¶ 22. The complaint does not acknowledge receipt by the Arroyos of a "missing items letter" before this phone call.

### D. CONDUCT SUBSEQUENT TO THE DECEMBER 13, 2010, PHONE CALL

On January 13, 2011, Aurora again began foreclosure proceedings against the Arroyos' home, scheduling the sale for February 7, 2011. *Id.* ¶ 32. However, five days later on January 18, Aurora requested documents from the Arroyos "[i]n order to once again attempt to evaluate Plaintiff's permanent loan modification . . . ." *Id.* ¶ 33. This began a long process, stretching to the filing of the present complaint, whereby Aurora would request documents, the Arroyos would send in those documents through a law firm they hired, and Aurora would then either lose the documents or request additional ones. *See id.* ¶¶ 33-59. During this time period Aurora thrice "closed" the Arroyos' file for a lack of documentation, even though Plaintiffs allegedly complied with Aurora's multiple document requests in a timely fashion in all but one instance. *Id.* ¶¶ 40, 51, 59. The foreclosure sale of Plaintiffs' home was postponed many times as well. *See id.* ¶¶ 33-59. As of the filing of the complaint Aurora had closed the Arroyos' file for a lack of documentation and scheduled a foreclosure sale.[4] *Id.* ¶¶ 54, 59. Aurora never gave the Arroyos a yes or no answer on their request for a loan modification.

Based on this conduct, Plaintiffs now bring seven causes of action against Defendants. They seek rescission of the Workout Agreement under Cal. Civ. Code § 1689 based on either: (1) improper consent or (2) failure of consideration. They also assert claims of: (3) negligent misrepresentation; (4) unjust enrichment; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; and (7) violation of California's Unfair Competition Law, California Business and Professions Code Section 17200.

### II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining

---

[4] It does not appear from the complaint that the foreclosure sale has been executed.

whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In general, a court cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.    DISCUSSION

#### A.    RESCISSION BASED ON IMPROPER CONSENT

California allows a party to a contract to rescind the contract if that party's consent was given by mistake or was obtained through fraud. Cal. Civ. Code § 1689(b)(1). Plaintiffs here seek to rescind the Workout Agreement under California Civil Code Section 1689(b)(1) using two distinct theories. First, they argue that their consent was given due to a mistake of fact, namely that they were mistaken in believing that the Workout Agreement was appropriate for their needs and that Aurora would offer them an opportunity to cure their arrearage. Secondly, the Arroyos contend that their consent was obtained through fraudulent inducement, namely that Aurora represented to them that they would be considered for a loan modification if they entered into the Workout Agreement. The Court considers each theory under § 1689(b)(1) in turn and DISMISSES each theory WITHOUT PREJUDICE.

##### 1.    MISTAKE OF FACT

The Arroyos contend that they were mistaken in believing that the Workout Agreement was suitable for their needs and that Aurora would offer them an opportunity to cure their arrearage upon its expiration. Additionally, in their Opposition to Defendants' Motion to Dismiss, Plaintiffs

recharacterize their argument as having been mistaken regarding Aurora's intent, specifically that they mistakenly believed that Aurora would fairly consider them for a loan modification. Opp'n at 10 (Dkt. 17). As the Arroyos do not allege that Aurora was likewise mistaken on any of those three facts, they thus seek rescission based on a unilateral mistake of fact. *See* 1 Witkin, *Summary 10th Contracts*, § 262 (2005) (noting that section 1689 allows for rescission both for instances of mutual mistake and for cases of unilateral mistake). To justify rescission based on unilateral mistake of fact, a plaintiff must show that "the unilateral mistake is known to the other contracting party and is encouraged or fostered by that party." *Burnett v. Regents of University of California*, 35 Cal. App. 4th 843, 855 (1995). In *Burnett*, the plaintiff failed to show a unilateral mistake justifying rescission because the plaintiff "submitted no evidence that defendant knew about his mistake and encouraged or fostered the mistake." *Id.*

Defendants move to dismiss the Arroyos' unilateral mistake argument on the grounds that Plaintiffs have not pled this cause of action with the specificity required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* This particularity requirement "includ[es] 'the who, what, when, where, and how of the misconduct charged.'" *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 933, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). This is so that defendants charged with inducing a mistake or fraud can have specific enough notice to defend against the alleged misconduct instead of simply denying they have done anything wrong. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). A plaintiff thus must show why a complained-of statement or omission was false or misleading. *Cundiff v. Dollar Loan Center LLC*, 726 F. Supp. 2d 1232, 1241 (D. Nev. 2010) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Rule 9(b)'s particularity requirement applies to state-law causes of action. *See Vess*, 317 F.3d at 1103.

Aurora contends that Plaintiffs' unilateral mistake claim does not meet Rule 9(b)'s heightened pleading standard because it fails to identify any falsities in the representations Aurora made to the Arroyos. The Arroyos claim that they were unilaterally mistaken in believing that the Workout Agreement was suitable for their needs and that they would be given an opportunity to cure their arrearage upon its expiration. However, nowhere in their complaint do the Arroyos identify statements made by Aurora that indicate Aurora was aware of the Arroyos' mistaken belief, nor that Aurora encouraged this belief. The Arroyos identify no discussions with Aurora representatives prior to signing the Workout Agreement that would support the inference of being misled prior to agreeing. The complaint thus does not justify rescission based on unilateral mistake of fact. *See In re GlenFed*, 42 F.3d at 1548 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."); *Kucharczyk v. Regents of University of California*, 946 F. Supp. 1419, 1433 n.11 (N.D. Cal. 1996) (describing elements necessary to justify rescission under § 1689(b)(1) based on unilateral mistake of fact).

The only statements by Aurora that the Arroyos reference are the Workout Agreement

itself and the August 18 Letter.  The express terms of the Workout Agreement are clear: Aurora agreed not to initiate foreclosure proceedings during the Workout Agreement's term, from July 1, 2010 to December 1, 2010.  This alone does not show how Aurora encouraged or fostered the Arroyos' mistaken belief that the Workout Agreement was suitable for their needs, and thus does not meet the pleading standard.  *See Burnett*, 35 Cal. App. 4th at 855; *Bly-Magee*, 236 F.3d at 1019.

   Plaintiffs contention that they were mistaken in believing that Aurora would fairly consider them for a loan modification fails for similar reasons: Plaintiffs have simply not pled this unilateral mistake theory with enough specificity to meet Rule 9(b)'s heightened requirements.  The Arroyos identify no statements by Aurora prior to their signing the Workout Agreement that show Aurora fostering or encouraging the Arroyos to maintain any mistaken belief regarding Aurora's intent, nor do they demonstrate that Aurora was aware of the Arroyos' mistake.  Absent such specificity, this theory of unilateral mistake likewise fails.

   Finally, Plaintiffs' contention that they were mistaken in believing they would be allowed an opportunity to cure their arrearage is misplaced because, as Plaintiffs' own allegations show, they have been afforded such an opportunity.  The Workout Agreement stated that upon its expiration, Plaintiffs would still be delinquent and would need to "cure the Arrearage through a full reinstatement, payment in full, loan modification agreement or other loan workout option that [Aurora] *may* offer."  Compl. Ex. A at 9 ¶ b (emphasis added).  The Workout Agreement did not promise any particular cure method would be offered to Plaintiffs; instead, it affirmed Plaintiffs' obligation to repay their arrearage to Aurora via one of the methods described.  Following the expiration of the Workout Agreement, Aurora waited more than a month to renew foreclosure proceedings, affording Plaintiffs ample to time to cure their arrearage.[5]  By postponing the foreclosure sale multiple times, the Arroyos have been afforded even more time to cure.

   Plaintiffs seem to argue throughout their complaint that they believed they would be offered a loan modification at the expiration of the Workout Agreement.  Unfortunately for Plaintiffs, nowhere in the Workout Agreement does Aurora promise to do this.  As a general rule in California, "[a] party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention."  *Blumenfeld v. R. H. Macy & Co.*, 92 Cal. App. 3d 38, 46 (1979).  As it stands, Plaintiffs' complaint does not state how or why they were mistaken regarding the Workout Agreement's express terms, nor that Aurora was aware of the Arroyos' mistaken beliefs, nor who led Plaintiffs to believe what they mistakenly believed.  Plaintiffs are free to amend their complaint in order to show how they were led to mistakenly believe that the Workout Agreement was appropriate for their needs, or how they were mistaken regarding Aurora's intent, but as it stands, Plaintiffs' complaint does

---

[5]However, as will be discussed below, Aurora did fail by never informing the Arroyos of their decision on their request for a loan modification; thereby leaving the Arroyos in the uncertain position of not knowing which cure method to pursue.  However, this argument is not raised in Plaintiffs' rescission claim.

not meet Rule 9(b)'s specificity requirement in order to show a unilateral mistake of fact justifying rescission.

### 2.     FRAUD IN THE INDUCEMENT

As an alternative theory to obtain rescission under § 1689(b)(1), Plaintiffs claim that their consent to the Workout Agreement was obtained through fraud. Specifically, they claim that Aurora represented that Plaintiffs would be offered a loan modification at the expiration of the Workout Agreement when Aurora had no intention of doing so. Defendants seek to dismiss this argument on the same grounds as Plaintiffs' unilateral mistake of fact theory, namely that Plaintiffs again fail to meet Rule 9(b)'s specificity requirement. As noted above, Plaintiffs make no reference to any statements by Aurora prior to Plaintiffs' signing the Workout Agreement. The only statements Plaintiffs do reference are those contained in the Workout Agreement, which expressly provides that the offer of a loan modification was entirely within Aurora's discretion. *See* Compl. Ex. A at 9 ¶ b (Aurora "*may*" offer a loan modification once the Workout Agreement expires) (emphasis added); *id*. at 9 ¶ a.2 (tender of the final payment under the Workout Agreement does not oblige Aurora to accept a loan modification for the Arroyos). As such, for the reasons discussed above, Plaintiffs' complaint fails to meet Rule 9(b)'s specificity requirement because it fails to show how Plaintiffs were led to believe something other than what the Workout Agreement's express terms specified. Plaintiffs are free to amend their complaint to include this information.

### B.     RESCISSION BASED ON A FAILURE OF CONSIDERATION

California allows a party to rescind a contract if the consideration for it failed in some material way as a result of the actions of another party to the contract. Cal. Civ. Code §§ 1689(b)(2). The Arroyos contend that Aurora's consideration for the Workout Agreement failed because Aurora initiated foreclosure proceedings in violation of its express promise and because Aurora did not provide the Arroyos with the opportunity to cure their arrearage through a loan modification. For a failure of consideration to warrant rescission, the failure must be "material, or go to the essence of the contract before rescission is appropriate." *Wyler v. Feuer*, 85 Cal. App. 3d 392, 404 (1978) (citations omitted).

Defendants seek to dismiss Plaintiffs' failure of consideration argument on the grounds that Plaintiffs have failed to show that consideration failed at all, let alone in a material way. The Court agrees. The Workout Agreement expressly states: "[t]he parties agree that the consideration for this Agreement is [Aurora's] forbearance from presently exercising its rights and pursuing its remedies . . . ." Compl. Ex. A at 2; *see also id.* at 4 ¶ 3 ("Lender shall forbear from exercising any or all of its rights and remedies now existing or arising during the term of [the Workout Agreement] . . . ."). Per Plaintiffs' own allegations, Aurora did not attempt to foreclose during the term of the Workout Agreement. Thus, Aurora's consideration cannot have failed in that respect. Further, as discussed above, the Workout Agreement contains no promise that the Arroyos would be offered a loan modification. Aurora's decision not to offer a loan modification at the end of the Workout Agreement does not show a failure

of consideration because Aurora never promised to make such an offer. Thus, Plaintiffs' failure of consideration argument is DISMISSED WITH PREJUDICE.

### C. NEGLIGENT MISREPRESENTATION

Plaintiffs claim that Aurora had a legal duty to disclose that their home would be foreclosed upon before being given an opportunity to cure. Plaintiffs allege that Aurora's failure to disclose this fact shows negligent misrepresentation by Aurora. Under California law negligent misrepresentation is a form of deceit or fraud. *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). A plaintiff pleading negligent misrepresentation must allege that a defendant: (1) misrepresented a past or existing material fact; (2) had no reasonable grounds for believing it to be true; and (3) intended to induce another's reliance on the fact misrepresented. *Id.* Further, the plaintiff must show that it was ignorant of the truth and justifiably relied on the misrepresentation, thereby suffering damages. *Id.*; *see also Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). As a species of fraud, Rule 9(b)'s particularity requirement applies to negligent misrepresentation claims. *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) ("Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b).").

Defendants seek to dismiss Plaintiffs' negligent misrepresentation claim on the grounds that it does not meet the heightened pleading standard of Rule 9(b). Specifically, Defendants claim that Plaintiffs do not identify any misrepresentations by Aurora and instead cite only the clear terms of the Workout Agreement. The Court agrees. Plaintiffs do not identify any support for their contention that Aurora hid the fact that their home would be foreclosed upon before the Workout Agreement expired. This contention doubly fails because, per their own allegations, Aurora did not attempt to foreclose on Plaintiffs' home during the Workout Agreement and did in fact offer them an opportunity to cure once it expired. It is difficult to imagine, then, how Aurora could have negligently misrepresented its intention to pursue a particular course of action that it, in fact, never took.

The Arroyos' negligent misrepresentation claim seems born out of a misunderstanding of the Workout Agreement, such as Aurora's obligations under it and when it expired. Plaintiffs may be able to amend their complaint with a set of facts demonstrating negligent misrepresentation that led them to believe what they did. However, their complaint as it stands does not make out a cognizable negligent misrepresentation claim sufficient to meet Rule 9(b)'s standards; the negligent misrepresentation claim is accordingly DISMISSED WITHOUT PREJUDICE.

### D. UNJUST ENRICHMENT

Plaintiffs claim that Aurora was unjustly enriched at their expense due to Aurora's pattern of falsehoods, misrepresentations, and delay detailed in their complaint. In their Opposition to Defendants' Motion to Dismiss, Plaintiffs characterize this argument as having been "tricked" into the Workout Agreement with the "carrot" of being considered for a loan modification, making all payments

under the Workout Agreement unjust. Opp'n at 14. California courts are divided as to whether unjust enrichment is a proper cause of action or a general principle underlying certain legal doctrines and remedies. *See*, *e.g.*, *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment.").

The Court discusses without deciding that unjust enrichment is a proper cause of action in California. Those courts that allow them state that "[t]he elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008). To prove that receipt was unjust, it usually must be shown that "the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." *Dinosaur Development, Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989) (citations omitted).

Defendants seek to dismiss Plaintiffs' unjust enrichment claim on the grounds that the Arroyos have failed to show that their payments to Aurora under the Workout Agreement were unjust. Aurora contends that it upheld its part of the Workout Agreement, and thus any payments it received were for the performance of its obligations and were therefore not unjust. The Court agrees. Through the Workout Agreement the Arroyos were able to buy themselves extra time to seek a way to cure their arrearage. The Arroyos bought this extra time with their payments under the Workout Agreement; in exchange for these payments Aurora did not foreclose on their home during the Workout Agreement. A plaintiff cannot sue under an unjust enrichment theory when the plaintiff has sustained no injury. *See Peterson*, 164 Cal. App 4th at 1594. Here, the Arroyos were not injured because they received the extra time they had bargained for. Even if Plaintiffs were "tricked" with the "carrot" they describe, for reasons discussed earlier, they have failed to plead that theory with the specificity required of a fraud claim. If they were under the mistaken belief that they had bargained for more, the Arroyos do not cite any statements by Aurora that led them to believe they had bargained for more prior to signing the Workout Agreement. Accordingly, Plaintiffs' unjust enrichment claim is DISMISSED WITHOUT PREJUDICE.

### E.     BREACH OF CONTRACT

The Arroyos allege that "Aurora breached the agreement by failing to offer Plaintiffs a permanent loan modification . . .." Compl. ¶ 104. As discussed above, the express terms of the Workout Agreement did not obligate Aurora to offer the Arroyos a permanent loan modification upon its expiration. If the Arroyos entertained this belief, they must plead specific, factual allegations as to why they entertained this belief when the express terms of their contract indicated otherwise. As such, Aurora cannot have breached the contract by failing to offer a permanent loan modification because the Workout Agreement did not call on Aurora to make such an offer. Accordingly, Plaintiffs' breach of contract claim for failure to offer a permanent loan modification is DISMISSED WITH PREJUDICE.

### F.     BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND

**FAIR DEALING**

**1.     THE IMPLIED COVENANT**

The Arroyos claim that Aurora violated the implied covenant of good faith and fair dealing (hereinafter "the implied covenant") when it failed to notify the Arroyos of Aurora's decision on their request for a loan modification, thereby frustrating their ability to cure their arrearage.[6] The implied covenant imposes upon a party "the duty to do everything that the contract presupposes that [the party] will do to accomplish its purpose." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093 (2004). "In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031-32 (1992) (quoting *Love v. Fire Ins. Exch.*, 221 Cal. App 3d 1136, 1153 (1990)). It is commonly a basis for liability in cases where the discretionary power of one party affects the rights of another. *See Ladd v. Warner Bros. Entm't, Inc.*, 184 Cal. App. 4th 1298, 1306 (2010) (quoting *Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*, 2 Cal. 4th 342, 372 (1992)); *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 106 (2009) ("Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.").

Because the implied covenant exists to ensure compliance with the terms of a contract, it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000). The extent of the duties imposed varies with the underlying contractual purposes over which it is implied. *See Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979). Thus, the implied covenant may impose a duty to affirmatively cooperate in a party's performance if a failure to do so would frustrate that party's performance. *See City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 490 (2008).

In order to plead breach of the implied covenant, "a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1021-22 (N.D. Cal. 2009).

---

[6]The Arroyos also contend that Aurora breached the implied covenant by initiating foreclosure proceedings without affording the Arroyos a chance to cure their arrearage. As has been discussed extensively above, Plaintiffs' own allegations show that: (1) Aurora did not initiate foreclosure proceedings during the period that the Workout Agreement was in effect; and (2) Aurora did in fact offer the Arroyos an opportunity to cure after the Workout Agreement expired on December 1, 2010. These theories for breach of the implied covenant thus fail.

Breach of an express provision of the contract is not required as a prerequisite to claiming a breach of the implied covenant. *See Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329, 1339 (2001) (citing *Carma Developers*, 2 Cal. 4th at 373).

### 2. THE ARROYOS HAVE ADEQUATELY PLED A BREACH OF THE IMPLIED COVENANT CLAIM

By requesting their financial information and then closing the Arroyos' file for lack of documentation without rendering a decision (and failing to send a "missing items letter" as the August 18 Letter clearly stated Aurora would), Aurora failed to affirmatively cooperate with the Arroyos' performance. Aurora's failure to affirmatively cooperate in the Arroyos' performance left the Arroyos in an uncertain position when it came time to cure their arrearage, thereby frustrating their performance. *See City of Hollister*, 165 Cal. App. 4th at 490. This is enough to meet the pleading standard for a breach of the implied covenant claim. *See Fortaleza*, 642 F. Supp. 2d at 1021-22 (requiring the existence of a contract and conduct that frustrates a party's rights under that contract in order to plead breach of the implied covenant). Plaintiffs' breach of the implied covenant of good faith and fair dealing claim thus survives Defendants' Rule 12(b)(6) motion.

#### i. FAILURE TO NOTIFY THE ARROYOS OF A DECISION REGARDING THEIR LOAN MODIFICATION REQUEST FRUSTRATED PLAINTIFFS' ABILITY TO PERFORM

Aurora's failure to notify the Arroyos with a decision on their request for a loan modification frustrated the Arroyos' ability to perform because it left them in an uncertain position as to which of the four potential cure methods Aurora "may" offer. Under the Workout Agreement, Aurora promised to afford the Arroyos an opportunity to cure their arrearage upon its expiration.[7] As discussed previously, Aurora provided the Arroyos with this opportunity. However, Aurora's conduct frustrated the Arroyos' ability to perform because it left them in an uncertain position as to *which* cure method Aurora would allow the Arroyos to pursue – in order to perform their part of the bargain, the Arroyos needed to know which of the cure methods would be available to them. The Arroyos were to "cure the Arrearage through a full reinstatement, payment in full, loan modification agreement or other loan workout option that [Aurora] *may* offer." Compl. Ex. A at 9 ¶ b (emphasis added). A loan modification was thus expressly stated as a possible cure method available to the Arroyos, subject to Aurora's discretion to offer one. While this offer was entirely discretionary, the Workout Agreement contains express provisions detailing what the Arroyos would have to do in order to be reviewed for such a modification – a review that would need to take place before Aurora could decide whether to

---

[7]The existence of a contractual obligation between the two parties – the Workout Agreement – is not in dispute. The first element of a breach of the implied covenant claim is thus satisfied.

offer a loan modification. The Workout Agreement states that after making the second payment under the plan (the August 1, 2010, payment), "it shall be the [Arroyos'] responsibility to provide [Aurora] with accurate and complete financial information in support of the [Arroyos'] *request for a loan modification* or other workout option." Compl. Ex. A at 8 ¶ a.2 (emphasis added). The Workout Agreement thus specified that, after certain conditions were met, the Arroyos would need to send Aurora their financial information so that Aurora could review their request for a loan modification. The only reasonable interpretation is that, after receiving those documents and reviewing them appropriately, Aurora would inform the Arroyos of its decision as to whether to offer them a loan modification. Aurora's failure to so inform the Arroyos frustrated their ability to perform under the Workout Agreement because it left the Arroyos in an uncertain position as to which of the cure methods the Arroyos would be allowed to pursue. A reasonable person in the Arroyos' financial position would not choose full repayment over a loan modification if they thought they still had a chance at such a modification. Aurora's failure to notify the Arroyos of its decision on their modification request thus frustrated the Arroyos' ability to perform and prevented them from fully enjoying the benefit of their bargain.

        ii.        **FAILURE TO SEND THE ARROYOS A "MISSING ITEMS LETTER" PRIOR TO CLOSING THEIR FILE FRUSTRATED PLAINTIFFS' ABILITY TO PERFORM**

The Arroyos' ability to perform under the agreement was further frustrated by Aurora's failure to send them a "missing items letter" prior to closing their file for a lack of documentation. As discussed above, the Workout Agreement contained express instructions for the Arroyos on what was expected of them in connection with their request for a loan modification; it instructed them to send documents to Aurora should certain conditions be met. Those conditions were met when the Arroyos made their first two payments under the Workout Agreement. This fact is acknowledged by the August 18 Letter, which reads: "*Based on your performance under the [Workout Agreement]*, we would like to offer you a more permanent foreclosure alternative option." Compl. Ex. B at 22 (emphasis added). The August 18 Letter then requests the very financial documentation that the Workout Agreement compelled the Arroyos to send. The Letter shows Aurora was reviewing the Arroyos for a loan modification because it states: "You may be required to complete a repayment plan prior to *modification of your loan*" and "You will be expected to pay a *loan modification fee*." *Id.* at 23 (emphasis added). The August 18 Letter then explains that if any items were missing from the Arroyos' documents, Aurora would send them a "missing items letter." *Id.* at 23. The Arroyos do not allege ever receiving such a letter. The Arroyos submitted their documents by the end of August, yet Aurora waited at least three months until mid-December to inform the Arroyos that their file was closed for a lack of documentation. By failing to send the "missing items letter" as Aurora stated it would, the Arroyos had no way of knowing that the review could not proceed properly; as far as they knew, they had done everything required of them. Aurora's refusal to affirmatively cooperate with the Arroyos' performance thus compounded their uncertain position regarding which cure methods would be afforded to them, frustrating their ability to perform and preventing the Arroyos from enjoying the full

benefit of their bargain.

>  3.  **REQUIRING THAT AURORA RENDER A DECISION REGARDING THE ARROYOS' LOAN MODIFICATION REQUEST AND INFORM THE ARROYOS OF ANY MISSING DOCUMENTS DOES NOT IMPOSE SUBSTANTIVE DUTIES BEYOND THE SPECIFIC TERMS OF THE AGREEMENT**

Aurora seeks to dismiss this claim on the grounds that providing the Arroyos with a decision on their request for a loan modification was not an express term of the Workout Agreement, and thus the covenant of good faith and fair dealing cannot be extended to create this obligation. *See Pasadena Live*, 114 Cal. App. 4th at 1094 (limiting the covenant to guarantee compliance only with the express terms of the underlying contract). Aurora makes much of the fact that the offer of a loan modification was entirely discretionary. This is true; as has been discussed, under the terms of the Workout Agreement Aurora was under no duty to offer the Arroyos a loan modification. However, the Workout Agreement expressly states that Aurora "may" offer the Arroyos one, and lays out the Arroyos' requirements in order to pursue a modification. As Aurora's own August 18 Letter shows, the Arroyos met those requirements and began the modification review process. The implied covenant has particular application in cases such as this, where Aurora's discretionary power affected the Arroyos' rights under the contract. *See Ladd*, 184 Cal. App. 4th at 1306; *Peak-Las Positas*, 172 Cal. App. 4th at 106. Requiring that Aurora act in good faith and inform the Arroyos whether they intended to offer them a loan modification after beginning the review process does not impose new substantive duties or limits on the contracting because the review process was expressly contemplated in the Workout Agreement. The Workout Agreement presupposes that Aurora would notify the Arroyos of its decision after the review process started, and the implied covenant imposes "the duty to do everything that the contract presupposes that [the party] will do to accomplish its purpose." *Pasadena Live*, 114 Cal. App. 4th at 1093. Thus, Aurora's argument that imposing these duties goes beyond the express terms of the Workout Agreement fails because the Workout Agreement expressly contemplates a loan modification review, thereby presupposing both a competent collection of the documents required for that review and the rendering of a decision upon that review's completion. Defendants' Motion to Dismiss this claim is DENIED.

>  G.  **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200**

Plaintiffs bring an action for unfair competition against Aurora under Cal. Bus. & Prof. Code § 17200 (California's Unfair Competition Law, or "UCL"). The UCL prohibits business activities that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200. In order to assert a claim under the UCL, a plaintiff must have suffered injury and lost property or money as a direct result of the alleged unfair competition. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1136-37

(C.D. Cal. 2005).

Defendants seek to dismiss Plaintiffs' UCL claim on the grounds that Plaintiffs have not shown they lost any money as a result of Aurora's allegedly unfair practices. Defendants argue that with their payments under the Workout Agreement, the Arroyos bought themselves extra time to find a way to cure their arrearage before their home was foreclosed upon. The Court agrees that the Arroyos have failed to show how the extra time they were afforded by making payments under the Workout Agreement resulted in injury to Plaintiffs. Again, if Plaintiffs' argument is that they were deceived into entering into the Workout Agreement, and that as a result of this they paid monies they otherwise never would have, Plaintiffs must plead that case with the requisite specificity in an amended complaint. Accordingly, Plaintiffs UCL claim is DISMISSED WITHOUT PREJUDICE.

### IV. CONCLUSION

For the foregoing reasons the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss. Plaintiffs' rescission claim based on mistake of fact, their rescission claim based on fraudulent inducement, their negligent misrepresentation claim, their unjust enrichment claim, and their unfair competition claim are DISMISSED WITHOUT PREJUDICE. Plaintiffs' rescission claim based on failure of consideration and their breach of contract claim for failure to offer a permanent loan modification are DISMISSED WITH PREJUDICE. Defendants' Motion to Dismiss Plaintiffs' breach of the implied covenant of good faith and fair dealing claim is DENIED.

Plaintiffs shall submit an amended complaint no later than March 19, 2012.

The Clerk shall serve this minute order on all parties to the action.